IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDUCATIONAL TESTING SERVICE<br>660 Rosedale Road<br>Princeton, NJ 08541,<br><br>    Plaintiff,<br><br>  v.<br><br>TRACY RENAUD, Senior Official Performing the Duties of the Director<br>U.S. Citizenship and Immigration Services<br>20 Massachusetts Avenue, NW<br>Washington, DC 20529<br><br>ALEJANDRO MAYORKAS, Secretary<br>U.S. Department of Homeland Security<br>650 Massachusetts Avenue, NW<br>Washington, DC 20001<br><br>LAURA B. ZUCHOWSKI, Director<br>U.S. Citizenship and Immigration Services<br>Vermont Service Center<br>75 Lower Welden Street<br>St. Albans, VT 05479<br><br>    Defendants. | Civil Action No. 1:21-CV-00631 |

## COMPLAINT

### Introduction

  1.  Plaintiff Educational Testing Service ("ETS") challenges the unlawful denial of its nonimmigrant petition (EAC-20-254-50142) seeking approval of H-1B classification on behalf of Dr. Jing Zhao under 8 U.S.C. § 1101(a)(15)(H).

  2.  Educational Testing Service is a 501(c)(3) nonprofit organization whose primary purpose is rigorous research to advance quality and equity in education for people worldwide by developing assessments, or testing, and engaging in the study of assessments and how

individuals interact with tests. ETS conducts education research, analysis and policy studies and actively develops a variety of customized services and products for teacher certification, English language learning and elementary, secondary and postsecondary education. In furtherance of its research, ETS develops, administers and scores more than 50 million tests annually – including the Test of English as a Foreign Language (TOEFL®) and Test of English for International Communication (TOEIC®) tests, the Graduate Record Examinations (GRE®) General and Subject Tests and the Praxis Series ® assessments – in more than 180 countries, at more than 9,000 locations worldwide.

3. As described in its initial petition and request for evidence response to U.S. Citizenship and Immigration Services (hereinafter "USCIS" or "the Service"), ETS seeks to employ Dr. Zhao in the role of Senior Research User Specialist, a position that will work within the Research Technology Group (RTG) to "develop solutions for new ideas in assessment, including innovative and interactive tasks (such as games, simulations, and dialogic interaction) as well as the tools to deliver the assessment tasks, collect and analyze data, and report assessment results." See ETS_H-1B Record_032-037; 136-143[1]. Classified in the "Human Factors Engineers and Ergonomists" occupation (SOC: 17-2122.01), a sub-category of "Industrial Engineers" according to the U.S. Department of Labor taxonomy, the minimum requirements of the role included "the attainment of a bachelor's degree or its equivalent, in Cognitive Studies, Human-Computer Interaction, Computer Science, or a closely related field." See ETS_H-1B Record_140.

4. On January 27, 2021, USCIS denied the H-1B petition, concluding that "[y]ou have not demonstrated that any of the four criteria enumerated in 8 CFR, section

---

[1] ETS_H-1B Record_001-245 is attached hereto as Exhibit 1.

214.2(h)(4)(iii)(A), above, are present in this proceeding. As such, the evidence of record does not establish that the job offered qualifies as a specialty occupation under section 101(a)(15)(H)(i)(b) of the Act." *See* ETS_H-1B Record_238-245.

5. The denial of the petition by USCIS runs counter to, and fundamentally disregards, substantial evidence in the record. The decision is arbitrary and capricious and an abuse of its discretion, and not in accordance with the law.

6. Plaintiff ETS seeks an order overturning the denial and requiring USCIS to adjudicate and approve its H-1B nonimmigrant petition.

**Jurisdiction and Venue**

7. This is a civil action brought under 5 U.S.C. §§ 702, 704 of the Administrative Procedure Act ("APA"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question subject matter jurisdiction) and 28 U.S.C. § 1361. This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201–02, and injunctive relief under 5 U.S.C. § 702, and 28 U.S.C. § 1361. The United States waives sovereign immunity under 5 U.S.C. § 702.

8. Venue is proper under 28 U.S.C. § 1391(e)(1)(A) as a civil action brought against officers and agencies of the United States in their official capacities in the district where the Defendants reside.

**Parties**

9. Plaintiff Educational Testing Service is a New York corporation headquartered in Princeton, NJ.

10. Defendant USCIS is a component of the U.S. Department of Homeland Security

("DHS"), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS adjudicates petitions for immigration benefits, and denied the nonimmigrant petition ETS filed on behalf of Dr. Zhao.

11. Defendant Tracy Renaud is the Senior Official Performing the Duties of the Director of USCIS. She has ultimate responsibility for the denial of ETS's petition and is sued in her official capacity.

12. Defendant Alejandro Mayorkas is the Secretary of DHS, and is sued in his official capacity.

13. Defendant Laura B. Zuchowski is the Director of the Vermont Service Center, and is sued in her official capacity. She leads the specific office within USCIS that adjudicated the petition.

**Legal Framework**

14. The Immigration and Nationality Act ("INA") provides H-1B classification for foreign nationals, in pertinent part, "coming temporarily to the United States to perform services… in a specialty occupation." 8 U.S.C. § 1101(a)(15)(H).

15. A specialty occupation is a position that requires the theoretical and practical application of a body of highly specialized knowledge, and attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation. 8 U.S.C. § 1184(i)(1).

16. DHS regulations define specialty occupation to mean "an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical

sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States." 8 C.F.R. § 214.2(h)(4)(ii).

17. Implementing regulations at 8 C.F.R. § 214.2(h)(4)(iii)(A) further provide that a position will satisfy the statutory definition of specialty occupation if it meets one of the following criteria:

- A baccalaureate or higher degree or equivalent is normally the minimum requirement for entry into the particular position;
- The degree requirement is common in industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
- The employer normally requires a degree or equivalent for the position; or
- The nature of specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with attainment of a baccalaureate or higher degree.

18. To perform services in a specialty occupation, a beneficiary must, *inter alia*, hold a U.S. bachelor's or higher degree from an accredited college or university (or a foreign degree determined to be equivalent) as required by the specialty occupation. 8 C.F.R. § 214.2(h)(4)(iii)(C).

**Factual Allegations**

19.     USCIS accepted an H-1B nonimmigrant petition filed by Plaintiff on behalf of Dr. Jing Zhao on June 16, 2020. *See* ETS_H-1B Record_238.

20.     ETS currently employs Dr. Zhao pursuant to approved H-1B status. Dr. Zhao is authorized to work in the United States through November 7, 2021 with her current H-1B status. *See* ETS_H-1B Record_054-055.

21.     Congress limited the "total number of aliens who may be issued" visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(b) ("H-1B visas") "during any fiscal year" from 2004 forward to 65,000 aliens, plus an additional 20,000 aliens who possess advanced degrees from qualified U.S. educational institutions. 8 U.S.C. § 1184(g)(1)(A); 8 CFR § 214.1(1)(a)(2). This limitation is commonly referred to as a "cap" on H-1B visas.  H-1B visas granted pursuant to these limited allotments are commonly referred to as "cap-subject."

22.     The "numerical limitations" on the issuance of H-1B visas do not apply, *inter alia*, to a visa issued to an alien who "is employed (or has received an offer of employment) at a nonprofit research organization or a governmental research organization." 8 U.S.C. § 1184(g)(5)(B). H-1B visas granted under this exception are commonly referred to as "cap-subject."

23.     Defendant USCIS promulgated regulations defining a nonprofit research organization as "an organization that is primarily engaged in basic research and/or applied research." 8 CFR § 214.2(h)(19)(iii)(C).

24. Dr. Zhao's current H-1B status is a "cap exempt" H-1B. In the last several years, USCIS has continually challenged Plaintiff ETS's long-held status as an H-1B "cap exempt" organization, notwithstanding the fact that ETS is a not-for-profit organization primarily engaged in research. Because Dr. Zhao's work is of critical importance to ETS, ETS did not want to risk a denial of Dr. Zhao's cap-exempt H-1B extension. ETS therefore registered Dr. Zhao for the FY 2021 cap-subject H-1B lottery and, after Dr. Zhao's registration was selected, ETS filed a "cap subject" H-1B on her behalf. The denial of this H-1B cap-subject petition is the subject of this legal challenge.

25. Dr. Zhao earned a Doctor of Philosophy degree in Cognitive Studies in Education from Columbia University in New York, New York in May 2018. Dr. Zhao also earned a Master of Science degree in Applied Statistics from Columbia University (May 2015) and a Bachelor's degree in Teaching Chinese as a Foreign Language from the East China Normal University (2008). Dr. Zhao's advanced degree coursework included Cognition and Computers, Latent Structure Analysis, Cognition and Learning, Psychology of Thinking, and Multivariate Analysis. *See* ETS_H-1B Record_032-037; 144-149.

26. Morningside Evaluations[2], an advisory firm engaged in providing academic evaluations services, evaluated Dr. Zhao's foreign education and determined it to be equivalent to a U.S. Bachelor of Education degree with a concentration in Chinese Language. *See* ETS_H-1B Record_052-053.

27. As the Plaintiff described in its initial Letter of Support ("LOS") and the subsequently filed Employer Request for Evidence Response Letter ("Employer RFE Response") the position of Senior Research User Specialist entails a range of duties including the following:

---

[2] https://morningeval.com/

(1) guide the design and development of engaging, interactive, and innovative assessments; (2) collaborate on research to support national and international testing programs, and; (3) contribute to technologies for supporting access to assessments by students with disabilities. These tasks involve client requirements-gathering sessions, usability testing, and design presentations as well as storyboarding and building interactive prototypes. These prototypes are for new assessment ideas that are designed to measure specific knowledge skills but allow the user to easily understand the task and how to use any interface tools required to complete the task. Per international standards, the assessments must provide text alternatives for non-text content (such as images, videos, or sound recordings), provide captions and other alternatives for multimedia, content that can be presented in different ways (including assistive technologies) without losing meaning, make it easier to see and hear content, make all functionality available from a keyboard, help users navigate and find content, make text readable and understandable, make content appear and operate in predictable ways, and help users avoid and correct mistakes as well as a variety of other criteria. *See* ETS_H-1B Record_032-037; 136-143.

28.   The Senior Research User Specialist position requires working knowledge of Web Content Accessibility Guidelines (WCAG), experience in an Agile development environment, and working with technical staff as well as the foundational knowledge and skills to develop cognitive science-based theoretical frameworks for informing the design of educational technology, as well as for the creation of educational applications that serve as test beds for such theoretical frameworks. *Id*.

29.   Among its list of education-related occupations, the Department of Labor, Bureau of Labor Statistics' Occupational Employment Statistics (OES) does not contain a specific classification for a "Research User Specialist" or a professional who conducts research in

cognition to develop user interfaces for assessments of human behavior as it relates to the use of technology for educational purposes. *Id*.

30.     The LOS submitted with the initial H-1B filing explained that the duties of the Research User Specialist position offered to Dr. Zhao are consistent with those of the "Human Factors Engineers and Ergonomists" occupation (SOC: 17-2122.01, a sub-category of "Industrial Engineers"). The LOS further lists numerous job responsibilities which are common to both the Human Factors Engineers and Ergonomists and the Research User Specialist position at ETS, demonstrating that the Human Factors Engineers and Ergonomists occupation is an entirely reasonable and appropriate designation. *See* ETS_H-1B Record_032-037.

31.     USCIS issued a Request for Evidence ("RFE") on September 25, 2020, and called for additional evidence that the position offered to Dr. Zhao meets the requirements for a specialty occupation. *See* ETS_H-1B Record_127-133.

32.     Plaintiff submitted its timely response on January 15, 2021, and, along with substantial evidence documenting the "specialty occupation" nature of the position, attached a support letter from Kara McWilliams, General Manager with ETS ("McWilliams Letter"), Dr. Zhao's's direct manager who oversees the work of over seventeen (17) professional employees. The McWilliams letter provided detailed explanations of Dr. Zhao's qualifications, the proposed detailed job duties, the company's minimum requirements for the role, further background as to the unique nature of the role in the context of Plaintiff's research and development activities and further tied the Plaintiff's requirements to the occupational description Human Factors Engineers and Ergonomists. *See* ETS_H-1B Record_144-149.

33.     The Employer RFE Response elaborates, ETS's Research Technology Group (RTG) "investigates, develops, and applies cognitive science theories and methods to solve

educational assessment problems…The RTG also develops the technology tools needed to deliver the assessment tasks, collect and analyze data, and report assessment results…" Further, the Employer RFE Response confirmed that "[t]he position offered to Dr. Zhao will focus on the design and development of user interfaces for these assessments and therefore requires advanced theoretical and practical knowledge of cognitive science applicable to scholarly and scientific experimentation and research." *See* ETS_H-1B Record_136-143.

34.     Plaintiff also provided a list of detailed job responsibilities and an in-depth explanation of what cognitive science entails. Plaintiff explained clearly how ETS utilizes cognitive science in its research and technology development, showing the complexity of the duties that focus on the theories and methodologies of cognitive science; the roles played by cognition in education; quantitative research design, analysis, and reporting; human-computer interaction; and psychology. *See* ETS_H-1B Record_136-149.

35.     Plaintiff submitted the following documentation, uncontroverted by Defendants, as evidence of the specialized nature of the role:

- Copies of multiple independent, authoritative career resource websites, including O*NET, Occupational Outlook Handbook, CareerOneStop, and Ferguson's Career Guide, confirming that the position is one which normally requires a specific bachelor's degree, or equivalent;
- McWilliams Letter confirming the complex duties of the Senior User Research Specialist position and the company's normal minimum requirements for entry into the position;
- Copies of documents from independent and authoritative reference sources

regarding the complexity of duties of a Senior User Research Specialist position and the normal education and experience requires for entry into similar positions;

- Copies of resumes and educational credentials of employees in similar positions at ETS, showing that ETS routinely hires individuals for these positions who possess advance degrees in fields similar to Dr. Zhao's fields of study;

- Copies of prior job advertisements from ETS, demonstrating its normal recruitment and hiring practices for the Senior User Research Specialist position; and

- Copies of documents relating to specific projects Dr. Zhao is working on in the position, demonstrating the theoretical and practical application of cognitive science and human factors engineering principles as required for Senior User Research Specialist position.

36. USCIS ultimately denied Plaintiff's petition on January 27, 2021. Without properly addressing the ample evidence submitted by Plaintiffs and focusing solely on unfounded assumptions, the denial concludes that Plaintiff did not establish the eligibility of the proffered position under any of the four "specialty occupation" factors enumerated by regulation at 8 C.F.R. § 214.2(h)(4)(iii)(A). *See* ETS_H-1B Record_238-245.

37. In its denial, Defendants assert that the provided excerpt from Ferguson's Career Guidance Center and copy of the Winter 2000-01 Occupational Outlook Quarterly article do not indicate that Human Factors Engineers and Ergonomists positions normally require a minimum of a bachelor's degree in a specific specialty because "a range of educational credentials may qualify an individual to perform the duties of the offered position." *See* ETS_H-1B Record_241.

38. Defendants' interpretation of these authoritative resources is impermissibly

narrow and contrary to law. Neither the INA nor implementing regulations supports the denial's characterization of the "specific specialty" described in Plaintiff's petition as requiring a single field of study or exclusive degree. Indeed, courts in this district have repeatedly ruled against this assertion by USCIS. *See Taylor Made Software, Inc. v. Cuccinelli*, No. 19-cv-00202, 2020 US Dist. LEXIS 58609 (D.D.C. Mar. 31, 2020); *Info Labs Inc. v. USCIS*, No. 19-684 (RC), 2020 WL 1536251 (D.D.C. Mar. 31, 2020). *See also Inspectionxpert Corp.*, 2020 WL 1062821 (M.D.N.C. Mar. 05, 2020), at *26 (holding that the Service's interpretation of the regulations to require a degree in one singular specialty does not warrant deference, and that this interpretation "conflicts with the [USCIS'] longstanding construction, which recognizes that a position can qualify as a specialty occupation even if it permits a degree in more than one academic discipline.").

39. Defendants failed to accord any evidentiary weight to the statements in the Employer RFE Response. Yet Defendants had no basis to find such statements not credible. Contrary to the Service's characterization of the evidence on record, the job description and additional evidence submitted by the Plaintiff in response to the Service's RFE included substantial documentation and legal analysis relating to the "specific specialty" issue, including a review of the academic coursework and body of knowledge required by the occupation. The denial does not acknowledge this evidence in any meaningful way. Instead, it merely reiterates the template language contained in its prior RFE. Thus, the denial is unsupported by the substantial evidence in the record. *See* ETS_H-1B Record_238-245.

40. Defendants' failure to accord evidentiary weight to the statements in the Employer RFE Response and the McWilliams Letter is patently inconsistent with the agency's own precedent, Matter of Treasure Craft of California, 14 I. & N. Dec 190 (Reg. Comm. 1972),

which affirms that a petitioner's statement should only be rejected when it is contradicted by other evidence in the record. *See also Barchart.com v. Koumans,* No. 19-cv-00556, 2020 US Dist. LEXIS 27974 (D.D.C. Feb. 19, 2020) (holding that the failure of USCIS to consider and address a key piece of evidence, such as a declaration the employer submitted to explain why the position requires at least a bachelor's degree, is arbitrary and capricious).

41.   Furthermore, Defendants disregarded the evidentiary weight of the authoritative summary for Human Factors Engineers and Ergonomists as provided by CareerOneStop, which is credible evidence as it represents itself as a "flagship career, training, and job search website for the U.S. Department of Labor" and is "sponsored by the U.S. Department of Labor, Employment and Training Administration." *See* ETS_H-1B Record_241; 167-173.

42.   Defendants rejected the CareerOneStop summary because, they alleged, it "provide[s] general information regarding the tasks and work activities associated with the offered position." *See* ETS_H-1B Record_241. However, Defendants failed to acknowledge the full summary which included a description of the job responsibilities, detailed tasks, education requirements, and wage information. It reports that 73% of employees employed in the Human Factors Engineers and Ergonomists category possess a minimum of a Bachelor's degree. *See* ETS_H-1B Record_167-173. Specifically, the summary states that 2% possess a PhD or professional degree, 19% possess a Master's degree and 52% possess a Bachelor's degree, with knowledge in fields such as engineering and technology, psychology and education. *Id.*

43.   On October 8, 2020, the Department of Homeland Security under the Trump Administration issued an Interim Final Rule titled, "Strengthening the H-1B Nonimmigrant Visa Classification Program."  The proposed rule sought to revise the regulatory definition of and standards for a "specialty occupation" and requiring corroborating evidence of work in a

specialty occupation, among other things. The proposed rule would have required that a petitioner bear the burden of demonstrating that there is a direct relationship between the required degree in a specific specialty and the duties of the position. The rule further required that in order to establish a direct relationship, the petitioner would need to provide information regarding the course(s) of study associated with the required degree, or its' equivalent, and the duties of the proffered position, and demonstrate the connection between the course of study and the duties and responsibilities of the position. In cases where the petitioner lists degrees in multiple disparate fields of study as the minimum entry requirement for a position, the petitioner would have to establish how each field of study is in a specific specialty providing "a body of highly specialized knowledge" directly related to the duties and responsibilities of the particular position to meet the requirements of sections 214(i)(1)(A) and (B) of the INA, 8 U.S.C. 1184(i)(1)(A) and (B), the regulatory definition, and one of the four criteria at new 8 CFR 214.2(h)(4)(iii)(A). The rule was originally set to go into effect on December 7, 2020. On January 20, 2021, White House Chief of Staff Ron Klain issued a memorandum[3] that directs, in part, that 1) all rules pending at the *Federal Register* that have not been published must be immediately withdrawn and 2) agencies must "consider" postponing the effective dates for regulations that have been published but not yet taken effect for 60 days from January 20, 2021. Accordingly, the portion of the rule that sought to revise the regulatory definition of and standards for a "specialty occupation" was withdrawn.

44.     Defendants impermissibly relied on the language in the withdrawn rule in adjudicating Dr. Zhao's H-1B petition as the RFE repeatedly states that the Petitioner has "not established how each of the qualifying fields of study that you have listed for the offered position

---

[3] https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/regulatory-freeze-pending-review/

is directly related to the duties and responsibilities of the position." *See* ETS_H-1B Record_238-245. In adjudicating petitions, it is axiomatic that Defendants may not rely on regulatory interpretations that are unpublished or have been withdrawn.

45. However, even if the regulatory interpretation relied on by the Defendants in this matter had the force of law, Plaintiffs clearly met even this higher evidentiary burden. The McWilliams's Letter described in great detail the advantages and suitability of an educational background in Cognitive Science and provided a highly specific explanation of how the various courses taken by Dr. Zhao in pursuit of her degree are directly related to the Senior User Research Specialist position at ETS. *See* ETS_H-1B Record_144-149. Defendants completely failed to discuss or even acknowledge this in their denial.

46. A review of the administrative record shows that ETS clearly demonstrated by a preponderance of the evidence that the position of Senior Research User Specialist meets more than one of the four specialty occupation factors enumerated by the regulation at 8 C.F.R. § 214.2(h)(4)(iii)(A) necessary to establish that it is a specialty occupation. Indeed, given the evidence provided with respect to the position of Senior Research User Specialist at ETS, this position would appear to be the quintessential "specialty occupation."

47. Defendants arbitrarily and capriciously dismissed, without meaningful evaluation, probative evidence showing that ETS satisfied the specialty occupation factors under the required "preponderance of the evidence" standard.

48. This denial leaves Dr. Zhao at risk of losing her work authorization upon the expiration of her current nonimmigrant status.

49. Unless the Court vacates the denial of ETS's petition, the company may well lose the services of a valuable employee in the United States.

### Exhaustion

50. The January 27, 2021 denial by USCIS of ETS's petition constitutes a final agency action under the APA, 5 U.S.C. § 704. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a) require administrative appeal of the denial.

51. Under 5 U.S.C. §§ 702 and 704, ETS has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

### CAUSE OF ACTION

### COUNT I

### Administrative Procedure Act Violation (5 U.S.C. § 706)

52. Plaintiff incorporates the allegations set forth in the preceding paragraphs.

53. Defendants' denial of the Plaintiff's nonimmigrant petition constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

54. No rational connection exists between the conclusions asserted by USCIS in its denial and the facts in the record.

### REQUEST FOR RELIEF

The Plaintiff requests that this Court grant the following relief:

1. Declare the Defendants' denial of ETS's H-1B petition is unlawful.

2. Vacate the denial and order Defendants to promptly approve the nonimmigrant petition.

3. Award Plaintiff its costs in this action; and

4. Grant any other relief that this Court may deem proper.

Dated: March 9, 2021                    MORGAN, LEWIS & BOCKIUS LLP


By:/s/ Eleanor Pelta
Eleanor Pelta (DC Bar No. 418076)
eleanor.pelta@morganlewis.com

1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:     +1.202.739.3000
Facsimile:      +1.202.739.3001

Attorney for Plaintiff